Good morning, Your Honors. May it please the Court, Richard Hawkins on behalf of the Appellant Melissa Trail. This appeal comes to this Court on two decisions from the Western District of Virginia. The first was the granting of a motion to dismiss under Rule 12. The second was a denial of a Rule 59 motion seeking to overturn the Rule 12 dismissal. The grovelment of both of those decisions is whether or not Ms. Trail can state a claim for relief, a free speech retaliation claim, under the Labor Management Reporting and Disclosure Act of 1959, the LMRDA. We submit that she can, and we submit that the District Court was erroneously ruled that she was unable to do so. This appeal, in terms of the LMRDA, presents three specific issues. The first is whether or not this Court has or should recognize a freestanding free speech retaliation claim under Sections 101 and 102 of the LMRDA. The District Court declined to do so, and we submit that decision was erroneous. The second issue is whether, assuming there is such a freestanding claim, Ms. Trail has created allegations in her complaint that her speech is protected, that it is sufficiently of union concern or of interest to the union membership at large that it is protected under Title I of the LMRDA, the Bill of Rights. We submit that it is. The District Court concluded differently, and we submit that decision is wrong. The third issue, and the Court need not reach this issue if, in fact, it concludes that Ms. Trail is correct on the first two, is whether or not she has stated a claim under Section 609, which is to say, have her allegations sufficiently risen to the level of discipline for purposes of raising a claim under Section 609. Now we have briefed all three of these issues, and what I would like to do, rather than repeat what we have said in our briefs, is drill down to some of the issues, some of the deeper issues, specifically as to the first issue of the free speech, the freestanding retaliation claim. What we have said in our papers, essentially, is Your Honors, and we said this in the District Court, is there is abundant authority that supports our claim. There is case law from the Second Circuit, the Third Circuit, the Fifth Circuit, the Sixth Circuit. We believe there is case law from this circuit that supports us. What we haven't done is tell you why you should follow all of that case law, other than we say it is sound and it is good law. The basis for following all that case law is the statutory structure of the LMRDA. The best way to analyze this is to focus on what the District Court actually said about that structure. This is at Joint Appendix, page 26. The Court said, I disagree with Trayl's view of how Sections 101, 102, and 609 interact with each other. Sections 102 and 609 do not provide alternative remedies for violations of Section 601. Instead, these two sections create substantive rights that benefit union members. One of the questions I had was, you brought this thing against the local, and it says it should be unlawful for any labor organization or officer or whatever to fine, suspend, expel, or otherwise discipline any of its members, but I was under the impression that after the case was, the indictment was null prost, that it was the company, General Dynamics, that was seeking to terminate Trayl from her position, and far from imposing any kind of the company's action. So how can this be retaliation when the discipline, which was expulsion or suspension of Trayl, was the company's action and the union was defending her? Let me begin in response to your question, Judge Wilkinson, by saying what you're talking about is discipline under Section 609, and it is our contention that in order to state a claim for relief under Sections 101 and 102, we need not show discipline. But your case is still a matter of retaliatory speech. I mean, that's what you think it is. All it is, is another question. I don't want to avoid your question. I haven't seen many cases of retaliation where it's the company that is seeking to initiate something and the union's actually fighting it. And we disagree that the union actually fought it, and our allegations show how Ms. Trayl believes that she was not properly involved in the grievance process, that she was not properly allowed to present her case. You don't dispute the fact that the union was challenging the company's action, do you? We disagree with the reasonableness of that challenge. They did file appeals, they did file a grievance, but the way in which they did that, and parallel to that, the exclusion of Ms. Trayl from certain meetings and the exclusion of her ability to have her own lawyer, you'll see that the allegations in the first amended complaint talk about the reduction, first the denial and then the reduction of the amount of fees to be paid to Ms. Trayl, that's all part of the retaliatory scheme. And we submit that that action by itself, which was a union vote, and it was a union vote that was caused or influenced by the President and Vice President who were the retaliatory actors. One of the things the Supreme Court has been very cautious about, and in the Garcetti case, the Supreme Court went to great lengths to understand it, and I understand that was a First Amendment constitutional case, but still it seems to have some relevance here. And the Supreme Court says, you know, we have these personal altercations and personal differences all the time, and we're not going to elevate these personal quarrels into a large matter of public interest. Now, it seemed to me that the, it seemed to the District Court that there was some argument over a single instance of where Trayl, who was the recording secretary, thought that the President and Vice President were looking at, using a union computer to look at pornography one afternoon. Well, I mean, I wish they hadn't been, it would be, you know, better, but if they've been looking over the union's books, but, you know, given that, it doesn't seem to me that that's a really big deal, or that it goes to the heart of anything about union corruption or governance or something like that, and what I worry about is there's personal disputes in the workplace all the time, and they don't always get elevated to the status of a federal case. And in Garcetti, the Supreme Court says, no, stop this. And so it's perfectly clear that, you know, whoever the Vice President and President of Is it just a problem with having personality conflicts in the federal court? We did no end of litigation in pursuing that rule. Well, if I may attempt to allay your concerns, this isn't, I mean, there may be, as the Court perceives, animosity between Ms. Trayl and the President and the Vice President, but the complaint, the speech at issue, is not one of those situations, as in Hilah, where the two members involved exchanged profanity, where there was essentially insubordination. Her complaint isn't unique to her. It's not her own personal station. It's not her own personal interest. She complained that the two top officers of the union were essentially engaging in personal activities in the union office, on a union computer, while being paid with union dues. One single instance of a complaint. It is, but how many instances of theft do you need to prove a larceny? I don't know whether it's true, or whether it's not true, but it just, I mean, how do we elevate it to a matter of union governance? I mean, there's no corruption here, there's no accusation of financial mismanagement. Those are the kind of things, you know, there's no accusation of strong-arming people. Not as part of that complaint. The speech, I'm talking about the complaint. Understood, understood. You know, it was on a motion to dismiss, you know, I just, there's a slippery slope here. Well, and here's the other problem that I have with the way that this court has, or the way that this case has gotten resolved, is that this is on a motion to dismiss. So we haven't had an opportunity to put forward the actual evidence of the speech. You know, we're guided by Rule 8. We're not supposed to set forth each and every factual detail as to whether or not our speech But we know, don't we know what the, don't we know what the, don't we know what the facts were as to the objection? She saw them using the computer for something other than she thought they should be using it for. She did, but what she complained about... That being the case, I'm not so sure that you framed it as objection to pornography rather than sort of a waste of union officials' time. What about that? That's our basic point. The pornography is incidental in the sense that it was the circumstance that precipitated her complaint. But her complaint, which went beyond the simple complaints within the union, she went to the regional representative. About what? But what's the gravamen of her complaint? That the company officers were engaging in, essentially, personal activity on company or on union time, being paid with her money, her dues, and the dues of every other person in the membership. So actually, I think that Judge Wilson gave you actually more than you might be entitled to in the analysis. He raises a concern about use of pornography. That's not really the core of your complaint. Your complaint is that it happened to be pornography. It could have been baseball games. Could have been YouTube videos. The gravamen of your complaint is misuse of union dues. Correct. Although, pornography is its own separate... But you're not claiming that. No, but I'm claiming it adds a layer of... I know that. The gravamen of your complaint is not that they were looking at pornography. That's what you just told me. That's right. It's the misuse of funds. That's right. So it seems to me, you're anxious to say yes to that, but it seems to me that further diminishes your claim from Judge Wilkinson's question. It's not a question of pornography and maybe the union ought to be against pornography generally as a matter of policy. Yours is, it makes, again, and we'll even decide what you've agreed, the pornographic view. It could have been a baseball game view, YouTube, personal notes to somebody. That's right. But this is the point. The complaint is that that union official, for some amount of time, and your theory could be a minute, 10 seconds, they did something other than work on what they were supposed to work on. That's a type of speech that's protected. That's not a slippery slope. That's a bottomless pit, isn't it? I disagree. I disagree, and our complaint explains this. Normally, these complaints, to follow up on what Judge Shedd is saying, normally these complaints have more than one single instance. I mean, if we, the way Judge Shedd frames it is interesting because if we take one instance of somebody doing some non-job related activity at some point during the day as a basis of a federal lawsuit, I don't, I really don't know where that ends. And I agree with Judge Shedd saying it doesn't have to be, it could be anything, but frankly, I mean, I wish everybody came to work, and for 100% of their time at work, they didn't discuss the Super Bowl during company time, or they didn't waste time in discussing who may have dated whom the last night, or how relationships are going, or all of these frivolous things that maybe cut down on productivity, but I mean, that's the way human beings are. And they do talk about non-job related functions occasionally during job hours, and if you, you know, frankly, the workplace would be pretty grim if people could never, you know, during a little, some small segment of time, engage in some non-job related thing. It's just the way things go, and if you had a claim, there are many of these claims that we recognize as legitimate, but they sure have this, there has to be some specifics under Iqbal and Twombly, some sort of specifics, and all you have is this one little instance, and most of these complaints, the ones that are serious, and I think this is what struck Judge Jones, you know, have a litany of things, where there's real, you know, evidence of some sort of abuse, and if you had any kind of more specifics, then she's goodness knows as the recording secretary, is in a position to observe malfeasance. She had a desire to observe it, because she doesn't like these people, she was in a position to have access to observe it, and what does she come up with? This one thing. Now, why isn't it reasonable, as the district court says, to expect a little thing more, something more? Your Honor, I'm past time here. If you'd like, I'm going to respond to it just briefly. I think HILA, the case that both sides have relied on, and the case that the district court relied on, provides the proper framework for analyzing this issue within the context of a motion to dismiss, where we construe everything in favor of mistrail, and the issue is, is the speech of the interest to the general union membership? In other words, if this kind of complaint was raised to the general union membership, would that have interest to them? It wasn't, but the point is, it doesn't need to be. The question is, substantively, content, form, and context, is it of the type of speech that should be provided protection, and at the motion to dismiss stage, where all inferences are in favor of mistrail, we submit this case should proceed, if more facts come out, more it is put on the bones of all of this, and it is ultimately concluded it is not entitled to protection, that may be for a later time, and at a later place, but again, we're at the very beginning stages of this case, and in that context, and Your Honor, We can talk about what Iqbal, and Quambley, and Garcetti, and those Supreme Court cases are doing, and where they're going, but at any rate, we probably best do that on rebuttal. Thank you. The only other thing I would say is that, what you've addressed, and what you've all complained, or all expressed concern about, with respect to personal time, and personal issues. You know, I thank the Chief Judge. Thank you. The Presiding Judge said on rebuttal. Mr. Paul? May it please the Court, Robert Paul, for the Appalachian Local 2850, Region 8, and the International Union of the UAW. Thank you. What brings us to this Court today, is that, two and a half years ago, Melissa Trail, who at that time was the Recording Secretary. Why isn't a complaint that union officials are looking at pornography, why shouldn't that be a matter of concern for the union membership? For two reasons, Judge Shedd. First of all, this was an instance when Ms. Trail walked into the union hall, and at that moment, she claims there was an image on the computer screen that was important. Let me say, you're just making the point. Why shouldn't, that didn't answer my question, why shouldn't a union membership be concerned about their officials looking at pornography? The membership could be concerned about that, but it's not the makings of a federal lawsuit. Because the LMRDA was adopted in order to protect union members the right to free speech, to express views, arguments, and opinions about the direction of the union, about the union internal issues. What about the direction of the union that they would tolerate officials using equipment and union time to look at pornography on the internet? What about that? You don't think the union membership cares about the direction of the union in that regard? I think a union could, and I think if Ms. Trail had a concern about that, she could have voiced her concern. What she did instead of that is she informed a regional representative of what she saw. What's your suggestion then for voicing her concern? She did just that, didn't she? She did that. She did not raise it at the general membership. She did not mention it to one member of local 2850. Is that what makes or breaks her federal, are you saying that if she had done that she might have a claim? No, there are two defects in the alleged speech. One is the content and the other is the context. And that's, of course, one of the issues that this court has adopted in the First Amendment context as well. In this case, this was not about the governance of the union. This was not about whether the union should be more aggressive with general dynamics, the employer, whether the union's policy should change. This had nothing to do with it. This was purely personal. Wait one second. You could have that same circumstance if somebody finds out that money's being stolen. You would say it had nothing to do with the company. It had nothing to do with the union being tougher in their negotiations with the union. This is just stealing money from the union. It had nothing to do with that. That doesn't help your case. We submit it does. I know, but I'm suggesting to you it doesn't. Well, Your Honor, in this case, what Ms. Trail did is she didn't raise any of those concerns. Listen, does it sound odd or unreasonable to you that a person sees some officials doing something she thinks is wrong? That's what she calls their supervisors? Seems to me that's pretty reasonable, and it seems to me the union would want her to do that rather than taking it to a meeting and expressing it to everybody in the union. Well, the alleged supervisor, according to the complaint, told her that this was a local matter, and she then could have raised it at the local level. She could have filed an internal... Let's go back. Let's just stop for a second. I apologize. Let's go back. No, no, no. I just want to get the facts straight. So you say that her... And go back to the question that Judge Diaz asked you. You suggest that her problem was she didn't meet the prerequisite of raising this at a union meeting before filing the lawsuit, although she went through channels first. That wasn't enough as a predicate to get into federal court to protect her free speech. In order... She had to do something with the membership at large? That is correct. That's right. She has to raise it in some way with a membership at large in order to fall within the protections of the free speech proviso of the statute. It was enacted in order to protect that. That is because why? Because that's the purpose of the statute, is to protect the union member to have the right to express views to the membership about union matters, not to protect someone who simply, essentially files a charge with the regional office. I mean, what if she had, for example, instead of calling the regional representative like a business agent, what if she had filed an EEO charge against the local? Let's assume all of the allegations that are in the complaint here happened, but she felt it was not because of the moment where she saw an image on the screen, but the local was retaliating against her because of her gender. And then assuming the union did all those things that she alleges, she might have a case before the EEOC, but she would not have a case under the LMRDA. If the union took some action... Where is the retaliation here? I'm sorry, Your Honor. Where is the retaliation here? Here? It's hard to see, Your Honor. The union, as you pointed out, defended Ms. Traill throughout the grievance process when she was first suspended and then terminated by General Dynamics and was headed towards arbitration. Mr. Hawkins acknowledges that, but argues... One can, regardless of the speech claim, there has to be another prong to the cause of action, which is that some retaliatory action was taken if this instance existed. That's right. There has to be retaliation, and there has to be retaliation by the union. What about the claim that she was denied her reimbursement for attorney fees? She raises that as a consequence. She raises the issue, which had to do with whether union dues money could be used to offset her lawyer's, criminal lawyer's expenses. As I understand it, that request was put before the membership. It was denied, and then a request for voluntary reimbursement among the members was the motion that passed. The members voted on that, and they did whatever they did, which she alleged... But isn't the fact that she was denied reimbursement in the first instance as a matter of union largesse, isn't that at least some colorable claim of retaliation? I don't believe so. What she alleges is not that the membership... Her case is not based on the fact that the membership denied her request because her complaint acknowledges ultimately she got the money. What she complains is the union president and vice president shifted their positions on the issue. That's ad hoc action, even if it's true, and the courts have made it clear, and the Supreme Court made it clear in the Braininger case, the other circuit courts have made it clear that where there's individual action, where a union officer or a union representative takes individual action against a member, that is not sufficient to state a claim under the LMRDA. Yeah, I mean, you say they changed their position, but that change in position, the appellant argues, resulted in the membership then changing its position as a collective body and denying her request for fees. I think the complaint acknowledges that ultimately she did get a reimbursement of attorney's fees. The larger issue that she raises in this case is the allegation that the union obstructed the grievance and arbitration process. And Mr. Hawkins argues, acknowledges that the union did go to bat from this trail, but questions the reasonableness of the union's actions. Your honors, that's a textbook duty of fair representation claim, and under the case law is not within the umbrella of the LMRDA. If this case is about generally the fact that the union obstructed the grievance and arbitration process, which we strongly disagree with, that's a DFR claim, not an LMRDA claim. Steve, I understand your position with respect to this issue of the conduct of union leadership. Is it your position that no misconduct by union leadership could ever, reported misconduct, could ever make out a claim under this statute? That would not be my position. Okay. I think if Ms. Trail... Where is the dividing line? If Ms. Trail went to the general membership and alleged that the president of the union was embezzling union funds, and then there was retaliation against her for making that the LMRDA. It would be... I mean, I think she would have a cause of action if there was a pattern of behavior that was alleged, rather than simply a single allegation of a single instance. I mean, that's what makes the thing threadbare to me. But if... It wouldn't have to go to the level of corruption or mismanagement of union funds. It could go to the level of, these people are regularly spending time on junkets. These people are regularly taking time off in the afternoon to go fishing. This isn't... They're on a union salary for this. My only problem with it is, she's in a position to report and to have access to what they're doing during the day. And the most she can come up with is this one single instance. But if there were a series of such incidents, or if there were a pattern of such incidents, or if these people really are spending significant amounts of time on personal endeavors, why wouldn't there be something more? This is so threadbare. This is so minuscule compared to what one... The general run of these complaints show much more, even at the motion to dismiss state, in terms of malfeasance. I mean, how many federal employees or federal judges or whatever spend some part of the day doing something that might be, in some sense, personal? I mean, everyone. Everyone does it. Maybe people work in their off hours to make it up and everything. But if this is going to be the criteria, that somebody comes in, walks in, sees somebody on a non-business activity, there are millions of cases that would result from that. And the Supreme Court in Garcetti is saying, no, that's not going to do. I agree. And I don't know what these people... I mean, these folks may be up to no good, but it has to be something more than this bare-bones complaint, than this one single incident. Your Honor, the complaint is 48 paragraphs long. It takes us on a tour of his use... Wait, wait, wait, wait one second. I apologize. I've heard the question. Is it your position that her claim fails because the complaint is too minuscule or because she didn't take that complaint before the general membership? Both. But I heard you say... So let's just say this. Had she taken this complaint after the supervisor or whoever said to handle it locally, had she taken that back to a general meeting, she would have crossed that threshold in your mind. She would have crossed that threshold, but the complaint would still be defective because the subject of her complaint... Was it that it was minuscule or it was not the type of complaint for which there's a free speech protection? To me, Your Honor, it's sort of... It's not the same thing. It most certainly is not the same thing, because what if the only complaint was I heard him plotting to murder somebody? Would that be a one-time incident? Would that be so minus... They were plotting to murder some guy who was going to run for union leadership or something like that. It's a one-time incident. You think that that would be minuscule or you think that might suffice because it dealt with something about governance of the union? I can see that would be a much harder question. If those were the... It wouldn't be a hard question. It would be a slam dunk as far as the cause of action is concerned. I tried to make it that way. The hook for the federal cause of action is so thin, it's an incident on one day at one moment. But what is required? You started answering the question from Judge Diaz. He said what else needed to be done. And you said, once again, you started with she needed to go in front of the general membership. Isn't that what you think? She needs to communicate her concerns to the general membership at a union meeting. You don't need to go that far. I'm not sure that's correct. That's your position. That is our position, that under the statute, the statute is intended to protect expressions to the union membership about union matters. And if she just goes to someone else and not to the membership, she's not falling within the umbrella of the protection of the statute. That may be part of the position, but another part of the position has to do with the nature of whether this is a matter of whether one single incident rises to the level of public concern. Isn't it true? I was asking those questions, so I sort of got you in that box, but you think conveying that concern to the membership is necessary, but not enough. Correct. That's your position. That is correct. And now let's shift now to the other question of when does it become enough? When it becomes enough when it's a matter concerning the governance and affairs and direction of the union. In the Hill occasion. Did dealing pornography ever get to that point? And how? They could if you said that they regularly did this. I think if Ms. Trail went to the membership and said, I've been in the office 20 times in the last month, and every time I'm in there, the president of the union is viewing. Is that because it's wasting union money? If that was her concern. Or if it was because they were looking at pornography, which. It would depend on what her concern is. If her concern that she expressed is the president is abusing his position by instead of doing union work, is looking at improper images on a computer screen, and he does this every single day. You wouldn't have to do it every single day. Just say there's a recurrent pattern of it. Just something a little bit more than this, because this opens up to any time you see any person in a shop doing something of a personal nature on company time, then that's actionable. That's right. And I don't think it is under the statute. She had recourse under the union's internal procedures. If she thought what the vice president was doing in terms of looking at using the computer was inappropriate, she could have filed charges against the president and vice president of the union under the UAW procedures for essentially dereliction of duty, and exercised her rights there. But she doesn't have the right under the LMRDA to take those facts and come into the federal courthouse. In the Hiller case, there was an exchange. She would be better off, a person in her position would be better off if she let the officers look at pornography for a week before she complained about it. I'm not suggesting that. I think you are. What I'm suggesting is if she... You answered the question. If it was a pattern, that would be better for her. So she's somehow punished because she nips it in the bud? She doesn't have a cause of action because this was not about the affairs of the union. But I asked you if union pornography could form the basis, and I thought you said it could. It would depend on all of the facts and what mistrail... I'm giving you the facts, two scenarios. She goes in on Monday, she sees people looking at, under your theory, she sees people looking at pornography, and she complains to the supervisors, versus she lets them look at it Monday, Tuesday, Wednesday, Thursday, and she finally calls on Friday. You say she'd be better off letting them view pornography for the week. For her complaint, she'd be better off calling on Friday rather than calling the first time she sees what she thinks is misconduct. She might have a stronger case, but it's like the Hill case, Your Honor, where there were words exchanged about the employee who was a business agent of the union about his work performance. There was an exchange of words, profanity was exchanged. He was eventually disciplined by the union. And the court said, this is not what the LMRDA is all about. We're not going to use this statute. Do you think we have to rein in these types of complaints? And I thought sort of it was somehow anchored to complaints about union governance or something like that. Not just, pornography's bad, misuse of time might or might not be bad, depending on what somebody thinks. Maybe somebody thinks they don't want you typing on the keyboard all day long, they want you to actually think about what you type before you type it, maybe. But is it not anchored to something like that really goes to the governance of the union or something like that, not just open-ended, it matters to the membership? What do you think? I think it has to do with what the congressional purpose was of the LMRDA, was to permit a member to express his or her feelings about the direction of the union and its representational activities without fear of retaliation. And I think if the concern is that the union president is viewing porn or yakking on the phone when he should be doing union business, or drinking a beer in the union office instead of doing union business, those are not the kinds of issues that justify coming to a federal courthouse. But they might be, might they not, if there were any kind of recurrence or any kind of You wouldn't have to wait for a week of pornography, but what you'd have to do, if you made a complaint to the regional director or something that, you know, these people regularly just are using their time on personal matters and what the like of it is, and she's had the ability to observe them over time. She's had the ability to observe them over time. And if there were other instances, you know, drinking a beer or, you know, reading a mystery or just taking off in the middle of the afternoon for who knows what, you know, that, couldn't that rise to the level of My time is up, but you're not the way you couldn't that rise to the level of protected speech? Not, not the way you posed the question, Judge Wilkinson, because what the question, if I understood it, was assuming all of those facts, she then reported that to a person at the regional level. She did not mention it to any union member of the local 2850. She did not go to a union meeting, an internal, informal grievance, a charge, if you will, that she calls up the regional guy, not to bring the free speech element of the, it is not your own. And we'd be, we'd be creating a circuit split on that point. I don't believe you'd be creating a circuit split on that point. I think the law, if we went, if we went the other way and said that, that, that internal grievance proceedings were protected under the statute, I think that if we'd be going against the bulk of case law, you would thank you, your honor. Yes, sir. I'd be happy to hear from you in rebuttal. Thank you, your honor. Before I address some of these particular points, I want to kind of put a, put a final touch on what I wanted to say in the opening argument about the recognition of a free speech, freestanding retaliation claim under sections 102 and 101, because we focused a lot on discipline as part of this, this oral argument. And I, you know, we, we contend that's not necessary. But it's important for this court to recognize that if it does not address that issue, in other words, if it focuses on the union concern issue and resolves the matter in that regard, it is going to leave open an intra-district court split between Judge Jones's opinion, which is published, and an opinion from the Middle District of North Carolina from 2002 as to whether or not such a claim exists. And I believe this court's Koala Vioch decision from 1991, which is post-Brenninger, provides proper authority for this court to recognize formally that such a claim does exist, and to do so consistent with at least five other circuits. And I think this court has an obligation to do that, to provide proper guidance for the lower courts. But I think there's a danger, isn't there, of wrenching the statute out of shape if we say that it applies to internal grievances, it applies to a single instance and a single instance. It's likely to have far more serious allegations than this. And if we're saying that there's retaliation because of inadequate representation in a grievance proceeding, I mean, those are, either one of those steps could be problematic. But to take all three of the steps, to take the single instance step as a matter of union governance and of public concern and of free speech, and to take the internal grievance procedure and say, yes, that's covered under the statute, and then to say retaliation is inadequate representation in the grievance process, and that's covered under the statute, you take those three steps, and pretty soon, you've got a metastasized statute that's covering almost everything. Your Honor, I disagree with the way that you've characterized that, because I believe you've put a narrow block on a narrow block on a narrow block, and I don't think the facts of this case or the law support any of that. I think what you've done is you're importing Garcetti into this analysis, and you're importing the issue of an internal grievance. This wasn't an internal grievance. She complained to the region. She didn't keep it in house. That's step two. That's step two. Step one was a one-time instance, and I think you're imposing, with your analysis, a limiting principle that's not part of either the statute or the case law. The one instance— What do you mean I'm importing Garcetti into that? I realize Garcetti is a constitutional case, but it's still a Supreme Court decision, and it still is highly pertinent in terms of what the Supreme Court regards as an intra-office feud and what it regards as a genuine matter of public interest. You know, I mean, I do think we may ignore Garcetti at our peril. And I'm not suggesting you do otherwise. What I'm saying is Garcetti specifically focuses on an internal office procedure. We disagree that Garcetti applies here, because this is not an internal interruption. And to make it easier for you to understand, we're using that word internal to mean it wasn't done openly to the members of the— Well, that's right. —jump within the union. And that's the only way he's using it. And the other— He's drawing a valid distinction that you should respond to, rather than saying it's not technically an internal grievance. No, and that—and I didn't mean to suggest— So that's what you need to do. Yes. You want to do it. Well, and I would suggest to the Court that Section 101A2, which is the Bill of Rights provision, the free speech section— Let me ask you this. What's the discipline here that you're complaining of? What's the discipline? The discipline, should there be discipline required, would be the attorney's fees factor, because that was a union-voted matter. That was something union qua union, and it was only taken about through the influence of the President and the Vice President. And with regard to the matter of— And do you think that the—you heard the other side say she failed because she didn't take her concern about the pornography to the membership in some way? Well, and that's what I was going to address. Then all you have to do is answer it. Yes. It's not required. It's not required because the statute doesn't require it. The statute says every member of any labor organization shall have the right, one, to meet and assemble freely with other members, two, to express any views, arguments, or opinions, and that's not limited to context, and three, to express at meetings of the labor organization his views upon candidates in an election or upon any business properly before the meeting. So the statute delineates three different categories, and the statutory provision upon which we're relying, which is the middle one, is not limited to— How is the report of misconduct with respect to pornography a view, argument, or opinion? It is her view that the union leadership should not— It's a statement of fact. It's just reporting misconduct. I'm going to suggest to the Court that that view, that argument, that opinion is her view that they are committing misconduct, that they are acting contrary to their duties. They may disagree with that. I'm not out to defend the union officers in this case, and I'm certainly not out to stonewall individual members, but I've voted in these cases to uphold the rights of union members to hold their feet of union officers to the fire. But when I look over the range of these cases, they all address—they all have more specifics. They all address something more serious. They all address something more repetitive, something more of a pattern than this one here. This is the most threadbare instance that I've seen in the range of these cases, and to affirm the district court on this threadbare claim is not going to do any damage to the right of any union member, but to reverse is going to open the floodgates in a major way. The affirmance is a very narrow thing based on a very threadbare, highly limited complaint, but a reversal opens the floodgates, and this just doesn't stack up against the gravity of misconduct that is alleged in case after case after case. Thank you. We'd like to come down and greet counsel, and we're moving to our next case.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Albert Diaz